**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **JACKSON BIOTECHS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CORNING INCORPORATED and CORNING SCIENCE MEXICO, S.A. de C.V.,**<br><br>Defendants. | **CASE NO. 2:26-cv-985** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Jackson Biotechs, LLC ("Plaintiff" or "Jackson Biotechs") files this Complaint against Corning Incorporated ("Corning Incorporated") and Corning Science Mexico, S.A. de C.V. ("Corning Science Mexico," and together with Corning Incorporated, "Corning" or "Defendants") for infringement of United States Patent No. 7,960,168 (the "'168 Patent"). Plaintiff seeks only retrospective relief for qualifying United States infringement occurring within six years before the filing of this action and no later than January 6, 2025.

## PARTIES

1. Plaintiff Jackson Biotechs, LLC is a Texas limited liability company with a mailing address at 1306 Sycamore Street, Murray, Kentucky 42071.

2. Defendant Corning Incorporated is a New York corporation with principal executive offices at One Riverfront Plaza, Corning, New York 14831. Through its Life Sciences segment and related operations, Corning Incorporated develops, manufactures, markets, sells, and supports cell-culture consumables, permeable supports, migration systems, and

related laboratory products in the United States. Corning Incorporated reports that it manufactures its Life Sciences products in California, Illinois, Maine, Massachusetts, New York, North Carolina, Utah, Virginia, China, France, Mexico, Brazil, and Poland.

3. Defendant Corning Science Mexico, S.A. de C.V. is a company organized under the laws of Mexico with its manufacturing facility in the Parque Industrial del Norte, Reynosa, Tamaulipas, Mexico. Corning identifies Corning Science Mexico, S.A. de C.V. as a Corning legal entity located at FINSA IV, Lots 12 and 13, Avenida Industrial Falcon, Parque Industrial del Norte, Reynosa, Mexico, under Electronic Commercial Folio No. 2019038028. Corning Incorporated has listed Corning Science Mexico, S.A. de C.V. among its subsidiaries in Exhibit 21 to its Annual Report on Form 10-K filed with the Securities and Exchange Commission. Mexican government records identify Corning Science Mexico by federal taxpayer registration number CSM990728CR3.

4. Corning Science Mexico operates Corning's Life Sciences manufacturing plant in Reynosa. Corning has publicly described its "Life Sciences plant in Reynosa, Mexico," including its production and warehouse areas. In January 2015, the Tamaulipas state government reported that Corning Science Mexico had inaugurated a $9.5 million expansion of its Reynosa plant, bringing its workforce to 515 employees; that it manufactures and assembles products for the medical sector, including centrifuge tubes, cryogenic tubes, and pipette tips; that it has operated in Tamaulipas since 1999, exporting its products; and that its location reflects the need to be closer to customers in North America.

5. The Reynosa plant is registered with the United States Food and Drug Administration as a medical-device manufacturing establishment, FEI No. 3006847360, under the name Corning Science Mexico. That registration identifies Corning Incorporated

(Owner/Operator No. 1317452) as the owner/operator of the Reynosa establishment and identifies a Corning employee in Tewksbury, Massachusetts as its United States agent and official correspondent. On information and belief, Corning Incorporated owns, directs, and controls Corning Science Mexico's manufacturing operations, including the manufacture of products for sale in the United States, and Corning Science Mexico acts as Corning Incorporated's manufacturing arm for those products.

**<u>JURISDICTION AND VENUE</u>**

6. This action arises under the patent laws of the United States, including 35 U.S.C. § 271 et seq. Plaintiff seeks damages only for infringement occurring in the United States within the six-year period preceding the filing of this action and no later than January 6, 2025, together with interest, costs, and other retrospective relief authorized by law.

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has specific personal jurisdiction over Corning Incorporated because Corning Incorporated purposefully offered for sale, sold, shipped, demonstrated, and supported the Accused Instrumentalities for customers in Texas and this District through its United States e-catalog, direct sales and application-support organization, and authorized distributors. On information and belief, before January 6, 2025 Corning Incorporated shipped accused 96-well systems into this District and its personnel demonstrated, validated, trained customers on, or technically supported complete migration and co-culture workflows here. The identifying order, shipment, demonstration, and support records are maintained by Corning. See *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565–66 (Fed. Cir. 1994); Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350–51 (Fed. Cir. 2016).

9. This Court has specific personal jurisdiction over Corning Science Mexico. Reynosa lies on the Texas–Mexico border. On information and belief, during the relevant period Corning Science Mexico manufactured Accused Instrumentalities at its Reynosa plant and shipped them by truck across the border into Texas, for importation into the United States and distribution by Corning Incorporated to customers throughout the United States, including customers in Texas and this District. Mexican export customs records compiled by S&P Global's Panjiva service reflect Corning Science Mexico truck shipments from Ciudad Reynosa under a final-export customs regime, destined for the United States and consigned to Corning Incorporated at One Riverfront Plaza, Corning, New York. United States customs records further identify Corning Science Mexico using a consignee address in Hidalgo, Texas and associated addresses in McAllen, Texas, including a freight-forwarder address. Corning Science Mexico thus purposefully directed its products into Texas and placed them into an established distribution channel with the knowledge and expectation that they would be sold to customers in Texas, and Plaintiff's claims arise out of and relate to those activities. See *Beverly Hills Fan*, 21 F.3d at 1565–66; *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177–79 (5th Cir. 2013).

10. In the alternative, this Court has personal jurisdiction over Corning Science Mexico under Federal Rule of Civil Procedure 4(k)(2). Plaintiff's claims arise under federal law; to the extent Corning Science Mexico contends it is not subject to jurisdiction in any state's courts of general jurisdiction, it has not identified any state in which it may be sued; and Corning Science Mexico's contacts with the United States as a whole—including manufacturing products for, exporting products to, and causing products to be imported into and sold throughout the United States—make the exercise of jurisdiction

consistent with the Constitution and laws of the United States. See *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293–94 (Fed. Cir. 2012); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414–15 (Fed. Cir. 2009).

11. Publicly available professional information identifies Corning Incorporated employee Richard Nguyen, a Global Data Governance and SAP VC Manager, as based in Plano, Texas, and Corning Incorporated employee Swayzer Buford, a Director of M&A Integration for Optical Communications, as based in McKinney, Texas. Plano and McKinney are within the Eastern District of Texas. Their continuing, company-wide business functions support the inference that Corning Incorporated employees regularly conducted Corning Incorporated business from fixed places in the District during the relevant period.

12. On information and belief, Mr. Nguyen and Mr. Buford regularly and continuously worked for Corning Incorporated from fixed home offices or other fixed physical locations in Plano and McKinney. Corning Incorporated knew of, approved, and ratified those locations; provided or required use there of Corning Incorporated computers, communications, SAP, data, transaction, collaboration, and reporting systems and other company property or materials; paid or reimbursed work expenses; and directed and supervised the business functions conducted from those places.

13. Corning Incorporated's recruiting materials corroborate that Corning Incorporated establishes and directs home-based positions, assigns account or geographic responsibilities, requires use of Salesforce and regular reporting, expects substantial customer travel, and treats the home office as the employee's work base. On information and belief, the Eastern-District work locations alleged above were similarly material to Corning Incorporated's operations, and Corning Incorporated intended to maintain those

District functions through replacement personnel if either employee ceased using the present place.

14. Venue is proper as to Corning Incorporated under 28 U.S.C. § 1400(b) because Corning Incorporated committed acts of infringement in this District and maintained regular and established places of business here through the fixed Plano and McKinney locations from which its employees regularly conducted Corning Incorporated's business. Each place was physical, regular and established, and a place of Corning Incorporated because Corning Incorporated ratified it through employment conditions, company resources and systems, supervision, assigned business functions, and its continuing need for the District presence. See *In re Cray Inc.*, 871 F.3d 1355, 1360–66 (Fed. Cir. 2017); *In re Monolithic Power Systems, Inc.*, 50 F.4th 157, 160 (Fed. Cir. 2022).

15. Venue is proper as to Corning Science Mexico under 28 U.S.C. § 1391(c)(3) because Corning Science Mexico is not a resident of the United States and may be sued in any judicial district. Section 1400(b) does not govern venue over a foreign defendant. See *In re HTC Corp.*, 889 F.3d 1349, 1354–61 (Fed. Cir. 2018); *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 714 (1972).

16. Joinder of Defendants is proper under 35 U.S.C. § 299(a). Plaintiff's right to relief against Defendants arises out of the same transactions, occurrences, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, and selling of the same Accused Instrumentalities, including Accused Instrumentalities that, on information and belief, Corning Science Mexico manufactured and exported to the United States and Corning Incorporated imported, offered for sale, and sold, and questions of fact common to both Defendants will arise in this action.

17. On information and belief, during the patent term and no later than January 6, 2025, Corning Incorporated sold and shipped accused HTS Transwell-96 and FluoroBlok 96 products into this District and, through its sales and application-support organization, demonstrated, validated, trained customers on, or technically supported complete accused migration, invasion, or co-culture workflows here. The customer identities, invoices, shipment records, demonstration logs, application-support communications, and protocol files are within Corning's possession and will be identified in venue and merits discovery. The employees supporting Corning's regular places need not work on the Accused Instrumentalities because § 1400(b) requires no causal relationship between the regular and established place and the separate District act of infringement. See *In re Google LLC*, No. 2018-152, 2018 WL 5536478, at *3 (Fed. Cir. Oct. 29, 2018); *In re Monolithic Power Systems*, 50 F.4th 157 (Fed. Cir. 2022).

18. The precise Plano and McKinney work addresses, remote-work approvals, company property and systems maintained there, reimbursements, assigned functions, and Corning Incorporated's intent to preserve those District functions are principally within Corning's possession. If venue is disputed, Plaintiff will seek focused discovery concerning those facts. See Yangtze Memory Technologies Co. v. Micron Technology, Inc., No. 2:25-CV-01010-JRG, Dkt. 90 at 1–4 (E.D. Tex. Aug. 13, 2026).

## **PATENT-IN-SUIT**

19. The United States Patent and Trademark Office issued the '168 Patent, titled "Biologically Active Substance Transfer Sheet, Cell Culture Kit Constituted of Cell Culture Plate and Biologically Active Substance Transfer Sheet, Producing Method Thereof and Method for Screening Cell Culture Conditions Utilizing the Same," on June

14, 2011 from Application No. 12/183,008. The ’168 Patent is publicly available from the United States Patent and Trademark Office.

20. The ’168 Patent claims priority to December 16, 2003. It identifies Kohei Watanabe, Takeshi Miyazaki, Osamu Kanome, Ryoichi Matsuda, and Tomoyo Fujiyama as inventors and Canon Inc. as the original assignee.

21. Plaintiff is the sole owner of the ’168 Patent by written assignment effective August 22, 2026. The assignment transferred all right, title, and interest in the ’168 Patent, including accrued causes of action and the right to recover damages for infringement occurring before the assignment. The United States Patent and Trademark Office recorded the assignment on September 2, 2026 at Reel/Frame 075885/0292.

22. The ’168 Patent addresses the controlled presentation and transfer of biologically active substances to multiple corresponding cell-culture regions. The specification describes biologically active substances including extracellular-matrix proteins, antibodies, cytokines, growth factors, hormones, and chemicals, and explains the use of an elastic or flexible transfer sheet aligned with a multi-region culture plate.

23. Independent claim 1 recites, among other things, a culture plate having two or more discrete culture regions; a sheet having discrete covering portions corresponding to those regions; a first biologically active substance immobilized on the culture regions; a second biologically active substance attached to the covering portions; a sheet elastic or flexible at least at those portions; and use of the sheet to transfer the second substance to the culture regions.

24. Independent claim 12 recites a method of culturing a cell with a kit defined in claim 1 or specified dependent claims, including covering the culture regions with the sheet’s covering portions and contacting a cell with a biologically active substance in a culture

liquid in those regions. Claims 3–6 and 8–10 add limitations concerning recessed culture regions, wall structures, holding layers, release, and covering-portion structures.

25. The ’168 Patent is presumed valid under 35 U.S.C. § 282 and expired on January 6, 2025. Expiration does not eliminate a claim for legally recoverable past damages. See *Genetics Institute, LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011).

26. Plaintiff has not made, offered for sale, or sold a patented article since acquiring the ’168 Patent after expiration. Plaintiff seeks only damages legally recoverable under 35 U.S.C. §§ 284 and 286, subject to proof of compliance with or inapplicability of any limitation under 35 U.S.C. § 287 during the relevant period.

## ACCUSED INSTRUMENTALITIES AND METHODS

27. The accused instrumentalities and methods include Corning HTS Transwell-96 permeable-support products, including catalog numbers 3374, 3384, and 3392; Corning FluoroBlok 96-Multiwell Insert systems; related BioCoat 96-well migration or invasion systems; corresponding receiver and spheroid plates, including catalog number 4520; and materially similar Corning 96-well common-insert products (collectively, the “Accused Instrumentalities”). Product names and catalog numbers identify representative instrumentalities and do not exclude materially similar configurations shown by discovery to operate in the same accused manner.

28. The HTS Transwell-96 architecture uses a common robotics-friendly tray carrying 96 aligned permeable inserts over corresponding receiver wells. Corning’s own 2013 Technical Bulletin #457, authored by Corning Life Sciences scientists in Tewksbury, Massachusetts with a BD Biosciences co-author, reports chemotaxis assays performed in 96-well plates using Corning FluoroBlok Multiwell Inserts with 3.0 µm pores (Cat. No.

351161 or 351162) coated with human fibronectin: labeled cells were added onto the inserts, the inserts were lowered into a 96-well plate containing chemoattractant, and fluorescence was measured from cells that had migrated to the bottom surface of the insert. Corning's 2019 poster likewise reports direct Corning performance of a 96-well Transwell/spheroid co-culture configuration with CAF cells seeded on the membrane underside and BT-474 spheroids localized in corresponding receiver wells.

29. Plaintiff's allegations are limited to complete configurations and uses satisfying every asserted claim limitation. Plaintiff does not allege that every sale or every possible use of a component product infringed.

30. The accused complete configurations use cells attached to the membrane portions as the second biologically active substance and, in the alternative, use membrane-bound fibronectin, collagen, laminin, Matrigel/ECM, or cell-secreted factors. The claimed first substance is supplied by complete customer, demonstration, or validation workflows employing an immobilized receiver-well ECM protein, adsorbed or gel-bound ligand, or adherent target-cell layer.

31. The 2013 Corning bulletin is direct, pre-expiration evidence that Corning itself assembled and used the common 96-well insert/receiver architecture and transferred labeled cells through fibronectin-coated membranes toward chemoattractant-containing receiver wells. Biologically active serum proteins adsorb to tissue-culture polymer surfaces; Corning's co-culture work also used location-fixed spheroids and associated biologically active cell material in corresponding receiver regions. On information and belief, Corning's United States R&D, validation, application-support, and customer-demonstration files include additional workflows using receiver-side ECM coatings, adsorbed ligands, gel-bound

factors, or adherent target cells. Those records will confirm the complete accused configurations and the extent of Corning's direct use.

32. On information and belief, during the relevant period Corning made and used complete accused configurations in the United States for development, validation, quality-control testing, demonstrations, training, and technical support. Corning also offered and sold the multiwell systems to United States customers, some of whom used them in the complete coated-receiver workflows alleged here.

33. Corning's product literature and application materials direct customers to combine the common insert tray with its receiver plate, seed cells and selected coatings on or above the membranes, place selected culture conditions in the aligned receiver wells, incubate the assembly, and detect migration or invasion. Only those instructions and uses that include the immobilized receiver-side active alleged here are accused.

34. Publicly available product literature, protocols, and other evidence concerning the Accused Instrumentalities support Plaintiff's infringement allegations. Additional details concerning Defendants' internal design, manufacture, testing, validation, demonstrations, training, sales, support, customer configurations, and use are peculiarly within Defendants' possession and will be confirmed and particularized through discovery.

## **<u>MANUFACTURE IN MEXICO AND IMPORTATION INTO THE UNITED STATES</u>**

35. Corning manufactures Accused Instrumentalities in Mexico and imports them into the United States. Government Scientific Source, a laboratory-products distributor serving United States government laboratories, lists the country of origin of Corning HTS Transwell-96 catalog numbers 3374, 3380, 3384, and 3392 as Mexico. Other resellers list United States origin for some HTS Transwell-96 units, and Government Scientific Source lists United States origin for receiver and spheroid plate catalog number 4520. On

information and belief, during the relevant period a substantial portion of the HTS Transwell-96 and related 96-well insert products sold in the United States was manufactured in Mexico, and the balance was manufactured by Corning Incorporated in the United States. The country of origin, manufacturing site, and quantities of each unit are recorded in Corning's manufacturing, labeling, and customs records.

36. Corning Science Mexico is the Corning entity publicly identified with Corning's Life Sciences manufacturing in Mexico. On information and belief, the Mexico-origin Accused Instrumentalities were manufactured by Corning Science Mexico at its Reynosa plant, at Corning Incorporated's direction and to Corning Incorporated's specifications, for sale in the United States.

37. Customs records corroborate that Corning Science Mexico manufactures and ships laboratory plasticware in commercial volumes and exports products from Reynosa to Corning Incorporated in the United States. Panjiva reports 2,897 Mexican customs shipment records for Corning Science Mexico at its Avenida Industrial Falcon, Parque Industrial del Norte address. Publicly displayed examples include truck shipments loaded at Ciudad Reynosa on September 24, 2025 and October 23, 2025, under a final-export customs regime, with a declared destination of the United States, a country of purchase of the United States, and Corning Incorporated, One Riverfront Plaza, Corning, New York, as consignee. On information and belief, Corning Science Mexico used the same Reynosa-to-United States channel, with Corning Incorporated as consignee and importer, to export Accused Instrumentalities to the United States throughout the relevant period and before January 6, 2025.

38. United States Customs and Border Protection bill-of-lading data further identify Corning Science Mexico as the shipper of hundreds of ocean shipments of "plastic laboratory

ware" and "plastic containers with lid for scientific use," classified under Harmonized Tariff Schedule subheading 3926.90, carried through United States ports including Houston, Texas, Miami, Florida, and New Orleans, Louisiana, between at least October 2013 and July 2026, including shipments in each year from 2015 through 2024. Those records reflect the scale of Corning Science Mexico's laboratory-plasticware manufacturing for Corning's worldwide distribution.

39. Each Accused Instrumentality that Corning Science Mexico manufactured and that was brought into the United States during the relevant period was imported into the United States by Defendants. On information and belief, Corning Science Mexico sold and shipped those products to Corning Incorporated for delivery in the United States, and Corning Incorporated, as consignee and importer, received them into the United States and then offered them for sale and sold them to United States customers, including through its e-catalog, direct sales organization, and distributors. Corning's import entries, commercial invoices, intercompany purchase and supply agreements, and country-of-origin labeling records will identify the imported units, their entry dates and ports, and the importer of record.

**COUNT I — INFRINGEMENT OF U.S. PATENT NO. 7,960,168**

40. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth here.

41. During the relevant period, Defendants directly infringed at least claim 1 of the '168 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, without authority. Corning Incorporated made, used, offered to sell, sold, and imported complete Accused Instrumentalities in the United States. Corning Science Mexico imported into the United States, and offered to sell and sold for delivery in the United

States, Accused Instrumentalities that it manufactured in Reynosa, Mexico, in the complete configurations described above. The accused complete configurations include a multi-region culture plate and aligned flexible membrane covering portions carrying a second biologically active substance for transfer toward corresponding culture regions holding an immobilized first biologically active substance, as further described above.

42. During the relevant period, Corning Incorporated directly infringed at least claim 12 under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by using complete Accused Instrumentalities in United States research, validation, testing, quality control, demonstrations, training, technical support, and/or commercial services. Corning Incorporated covered corresponding culture regions with aligned membrane portions and contacted cells with biologically active substances in culture liquid in those regions.

43. United States customers, laboratories, service providers, and other end users directly infringed at least claims 1 and 12 by assembling and using the complete Accused Instrumentalities as instructed. At the pleading stage, Plaintiff need not identify each direct infringer by name where the complaint plausibly alleges that at least one direct infringer existed. See *In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323, 1336–37 (Fed. Cir. 2012).

44. To the extent multiple persons participated in an accused method, the relevant laboratory, company, or service provider directed or controlled the performance by conditioning participation or receipt of a benefit on performance of the claimed steps and establishing the manner or timing of that performance. The steps were therefore attributable to a single entity. See *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc); *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1380–84 (Fed. Cir. 2017).

45. As a direct and proximate result of Defendants' infringement during the patent term, Plaintiff is entitled to damages adequate to compensate for the infringement, in no event less than a reasonable royalty, for legally recoverable acts occurring within six years before filing and no later than January 6, 2025, together with interest and costs under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

46. Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a) enter judgment that each Defendant infringed one or more claims of the '168 Patent during the patent term;

(b) award damages under 35 U.S.C. § 284 adequate to compensate for legally recoverable infringement occurring within six years before filing and no later than January 6, 2025, in no event less than a reasonable royalty;

(c) award pre-judgment and post-judgment interest and costs; and

(d) award any other retrospective relief authorized by law.

Respectfully Submitted

/s/ Christopher A. Honea
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com
Randall Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com
Christopher A. Honea
Texas Bar No. 24059967
chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**
**JACKSON BIOTECHS, LLC**